IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARSHA BAIR; AHMED ABDELKAMEL; CYNTHIA GERBER; ZACHARY GODING, MAGGIE GRAHAM; BARBARA GRASER; SHAWNNA HILEMAN; CARRIE HUFF; ELAINE LANTER; CHRISTINE MILLER; LAURA MOYER; MICHAEL O'HARA; COURTNEY PRITCHETT; JARED RIBLET; JARRIUS RIBLET; EMILY ROMANS; STANLEY SMALLWOOD; VICKI SMALLWOOD; HEATHER TACKETT; and BETH WINEMILLER, on behalf of themselves and all others similarly situated, | Case No. 2:26-cv-00748 |
| | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiffs, | **JURY DEMAND** |
| v. | |
| SAFE AND SECURE HOMECARE CORPORATION, d/b/a SAFE AND SECURE HEALTHCARE CORP., and d/b/a SAFE & SECURE HEALTHCARE; | |
| ROBERT J. NICHOLSON; | |
| SAFE & SECURE HOMECARE HEALTH PLAN; | |
| SAFE & SECURE HOMECARE 401(K) PLAN; and | |
| JOHN DOE PLAN FIDUCIARY(S), | |
| Defendants. | |

## I.  INTRODUCTION

1. Defendant Safe and Secure Homecare Corporation d/b/a Safe and Secure Healthcare Corp. and d/b/a Safe & Secure Healthcare ("Safe & Secure") is an Ohio corporation providing home healthcare, workforce, and entertainment services to disabled adults throughout Ohio.

2. Defendant Robert J. Nicholson is the owner and CEO of Defendant Safe & Secure.

3. Defendants Safe & Secure Homecare Health Plan ("Health Plan") and Safe & Secure Homecare 401(k) Plan ("401(k) Plan") are employee benefit plans, named here under Fed. R. Civ. P. 19(a) only to ensure complete relief can be granted.

4. Defendant(s) John Doe Plan Fiduciary(s) are yet unknown fiduciaries of the Health Plan and 401(k) Plan.

5. Defendants Safe & Secure, Nicholson, and John Doe Plan Fiduciaries are collectively referred to as "Defendants."

6. Named Plaintiffs Marsha Bair, Ahmed Abdelkamel, Cynthia Gerber, Zachary Goding, Maggie Graham, Barbara Graser, Shawnna Hileman, Carrie Huff, Elaine Lanter, Christine Miller, Laura Moyer, Michael O'Hara, Courtney Pritchett, Jared Riblet, Jarrius Riblet, Emily Romans, Stanley Smallwood, Vicki Smallwood; Heather Tackett, and Beth Winemiller are employees and former employees of Defendants (collectively, "Named Plaintiffs").

7. Named Plaintiffs are all residents of Ohio.

8. Named Plaintiffs file this Class and Collective Action Complaint on behalf of themselves and all others similarly situated (collectively, "Plaintiffs").

9. Defendants' business works with the disabled adult community, providing home healthcare services, independent living assistance, workforce programs and training, and social activities. While some clients live with family members or other disabled adults, many live independently. However, many clients still require 24-hour care or at least the presence of workers.

10. Defendants' employees include direct care workers, site leads, house managers, workshop managers, and operations managers. Site leads and

house managers perform similar (if not identical) duties, primarily acting as direct care workers but also organizing work schedules and client appointments. Other managers may also sometimes perform direct care work.

11. Over the last several years, Defendants have taken multiple illegal actions to shortchange and outright steal from their own employees. When an employee puts in a notice of resignation, Defendants retroactively reduce the pay rates for their recent workweeks to minimum wage. Until July 2025, Defendants did not pay house managers a premium for overtime hours worked. A 2025 collective action case regarding the house managers was not enough to stop Defendants improper actions: Defendants paid off potential claimants so they couldn't join the action, and then changed the house managers to salaried to continue cheating the employees out of their owed overtime. Other salaried employees who primarily performed direct care work were similarly misclassified and not paid at all for hourly work, as were site leads responsible for scheduling who had to perform the work off-the-clock.

12. Besides these wage-hour violations, Defendants committed a number of violations related to employee benefit plans. Defendants withheld, but failed to remit, both employee and employer premiums to the Health Plan, causing Plan Participants to incur charges at a time they believed they were covered. Defendants withheld, but failed to remit, both employee and employer premiums to the 401(k) Plan, and failed to complete the proper registration to allow employees to access their Plan accounts. Finally, Defendants withheld but failed to remit employee premiums to various non-ERISA employee benefit plans (collectively, "Voluntary Plans").

13. This Class and Collective Action Complaint alleges violations in seven broad categories: (1) ERISA violations related to the Health Plan; (2) ERISA violations related to the 401(k) Plan; (3) Ohio Prompt Pay Act violations related to Defendants' non-ERISA Voluntary Plans; (4) wage-hour violations related to Defendants' paying house managers straight time for all hours worked before July 2025; (5) wage-hour violations related to Defendants' misclassifying house managers as exempt from overtime since July 2025; (6) wage-hour violations related to Defendants' retroactively lowering employees' pay to minimum wage for their final two pay periods before separation from the company; and (7) wage-hour violations related to Defendants' failure to pay site leads and house managers for off-the-clock scheduling and related work.

## II. HEALTH PLAN ALLEGATIONS

### A. General Health Plan Allegations

14. This portion of the action arises under Title I of the Employee Retirement Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by Plaintiffs under ERISA §§ 502(a)(1), (2), and (3), 29 U.S.C. §§ 1132(a)(1), (2), and (3), to recover benefits due to them under the terms of the Health Plan, to enjoin acts and practices that violate the provisions of Title I of ERISA and the terms of the Health Plan, to obtain appropriate equitable relief to redress violations of ERISA and the Health Plan, and to enforce the provisions of ERISA.

4

15. This portion of the action is filed against Defendant Safe & Secure, Defendant Nicholson, Defendant(s) John Doe Plan Fiduciary(s), and the Health Plan. (collectively, "Health Plan Defendants").

16. Among other employee benefits, the Health Plan Defendants offer health benefits to employees through a fully-insured Plan.

17. Upon information and belief, at no time have the Health Plan Defendants submitted a Form 5500 to the United States Department of Labor ("DOL") or Internal Revenue Service ("IRS") related to the Health Plan.

18. Since at least January 1, 2023, the Health Plan has been a fully-insured plan under the auspices of ERISA.

19. Since at least January 1, 2023, the Health Plan's benefits were funded by a fully-insured policy with Aetna Life Insurance Company ("Aetna").

20. For each employee paycheck, the Health Plan Defendants would withhold the selected premium from each employee for remittance to Aetna ("employee premium").

21. For each employee paycheck, the Health Plan Defendants would set aside a corresponding employer premium for each employee for remittance to Aetna ("employer premium").

22. For each employee paycheck, the Health Plan Defendants were required to remit both the employee and employer premiums to Aetna to ensure continued coverage for the Health Plan Participants' chosen health benefits.

23. On information and belief, starting on or about March 1, 2026, the Health Plan Defendants failed to remit the employee and employer premiums, causing Aetna cancel the benefits.

24. During this time, the Health Plan Defendants continued to deduct weekly premiums, did not inform Health Plan participants that the coverage was terminated, and allowed participants to believe that they were still covered.

25. The Health Plan Defendants did not keep the employees' withheld premiums in trust, as required, but instead misappropriated and misused assets belonging to the Health Plan.

26. As a result, the Health Plan Defendants have stolen Plaintiffs' wages and benefits and left them vulnerable to substantial financial liability to their medical providers.

27. Plaintiffs, Health Plan participants along with their families, all sought medical treatment during this time, not knowing that the benefits they were paying for had been canceled.

28. Plaintiffs suffered losses, including stolen Health Plan assets and unpaid medical claims.

## B. Jurisdiction and Venue

29. This court has jurisdiction over this portion of the action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

30. The Health Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

31. Venue of this portion of action lies in the Southern District of Ohio pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because at all relevant times, the Health Plan has been administered in Upper Arlington, Franklin County, within this district and division.

## C. Parties

32. Plaintiff Abdelkamel was, at all relevant times from January 27, 2026 through June 12, 2026, a Health Plan Participant.

33. Plaintiff Goding is, and at all relevant times since September 17, 2024 has been, a Health Plan Participant.

34. Plaintiff Graser is, and at all relevant times since May 19, 2025 has been, a Health Plan Participant, along with their spouse and child(ren).

35. Plaintiff Huff is, and at all relevant times since February 9, 2026 has been, a Health Plan Participant.

36. Plaintiff Miller is, and at all relevant times since July 17, 2025 has been, a Health Plan Participant along with their child(ren).

37. Plaintiff Pritchett was, and at all relevant times from July 6, 2025 through May 15, 2026, a Health Plan Participant along with their child(ren).

38. Plaintiff Tackett is, and at all relevant times since February 24, 2025 has been, a Health Plan Participant.

39. Defendant Safe & Secure is, and at all relevant times has been, a for-profit company based in Upper Arlington, Franklin County, within the jurisdiction of this Court.

40. Defendant Safe & Secure provides, and at all relevant times has provided, home healthcare services, independent living assistance, workforce programs and training, and social activities throughout Ohio, with its corporate office in Upper Arlington.

41. Upon information and belief, at all relevant times Defendant Safe & Secure was and is the Health Plan Sponsor under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

42. Upon information and belief, at all relevant times the Health Plan did and does not have a designated Administrator, rendering Defendant Safe & Secure the Health Plan Administrator under ERISA § 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii).

43. At all relevant times, Defendant Safe & Secure exercised discretionary authority and control respecting the management and disposition of the Health Plan and its assets and exercised discretionary authority and responsibility in the administration of the Health Plan and thus was and is a fiduciary of the Health Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

44. For the reasons identified above, at all relevant times, Defendant Safe & Secure was and is a party in interest to the Health Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

45. At all relevant times, Defendant Safe & Secure was and is an employer whose employees are covered by the Health Plan, and so was and is a party in interest to the Health Plan within the meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

46. Upon information and belief, the Health Plan is an employee welfare benefit plan, established before January 1, 2023.

47. At all relevant times, the Health Plan was and is a fully-insured plan providing medical and pharmacy benefits through Aetna.

8

48. The Health Plan is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

49. Upon information and belief, Defendant Nicholson is an individual who, at all relevant times, lived and worked in Upper Arlington, Franklin County, within this Court's jurisdiction.

50. At all relevant times, Defendant Nicholson is and has been Defendant Safe & Secure's owner and CEO, and so was and is a party in interest to the Health Plan within the meaning of ERISA §§ 3(14)(E) and (H), 29 U.S.C. §§ 1002(14)(E) and (H).

51. At all relevant times Defendant Nicholson exercised discretionary authority and control respecting the management and disposition of the Health Plan and its assets and exercised discretionary authority and responsibility in the administration of the Health Plan.

52. Thus, Defendant Nicholson was and is a fiduciary of the Health Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest to the Health Plan within the meaning of ERISA §§ 3(14)(A), 29 U.S.C. §§ 1002(14)(A).

53. Upon information and belief, additional individuals may be named or functional fiduciaries of the Health Plan. Accordingly, they are named as John Doe Plan Fiduciary(s) pending determination of their identities.

**D. The Health Plan Defendants Failed to Fully Fund the Health Plan, Failed to Prudently Manage Health Plan Assets, and Failed to Remit Withheld Premiums as Required by the Health Plan**

54. The Health Plan Defendants regularly withheld premiums from Named Plaintiffs' and similarly situated Health Plan participants' paychecks for the putative purpose of funding the Health Plan. Consequently, these amounts were Health Plan assets that the Health Plan Defendants were obliged to hold in trust and maintain and use for the benefit of the Plan.

55. The Health Plan Defendants were required to hold Health Plan assets in trust to deliver the assets to Aetna to fund the Health Plan.

56. The Health Plan Defendants failed to adequately fund the Health Plan. Instead, the Health Plan Defendants retained the funds deducted from its employee payroll.

57. The Health Plan Defendants misused Health Plan assets, engaged in self-dealing transactions by commingling Health Plan assets with general corporate funds rather than remitting them to Aetna, and otherwise failed to administer the Health Plan in the interests of Health Plan participants.

58. On or about March 2026, the Health Plan Defendants began withholding the Health Plan Participants' premiums to the Health Plan from their weekly paychecks but did not remit these premiums to the Health Plan.

59. On or about March 2026, the Health Plan Defendants began to fail to remit employer premiums to the Health Plan.

60. Because the Health Plan Defendants failed to remit both the employee and employer premiums to the Health Plan, Aetna canceled the Health Plan effective May 1, 2026.

10

61. Between approximately March 1 and June 11, 2026, the Health Plan Defendants failed to inform Health Plan Participants that they had not remitted the employer or employee contributions to the Health Plan.

62. Consequently, Named Plaintiffs and similarly situated Health Plan Participants continued to seek medical care and services with the expectation that the costs of such care and services would be covered and paid for as provided by the Health Plan.

63. Named Plaintiffs and similarly situated Health Plan Participants suffered losses, including stolen Health Plan assets and unpaid medical claims.

64. Had the Health Plan Defendants informed Named Plaintiffs and similarly situated Health Plan Participants that the Health Plan Defendants had not remitted premium payments, at least some participants would not have incurred uncovered claims, either by obtaining alternative health care coverage or by delaying voluntary procedures or medications.

65. The Health Plan Defendants' failure to timely inform Named Plaintiffs and similarly situated Health Plan Participants that the Health Plan Defendants had not or had not remitted the premiums constitutes material misrepresentations as to the status of Health Plan Participants' benefits under the Health Plan.

66. The Health Plan Defendants' failure to timely inform Named Plaintiffs and similarly situated Health Plan Participants that the Health Plan had been cancelled constitutes material misrepresentations as to the status of Health Plan Participants' benefits under the Health Plan.

67. On or about June 11, 2026, the Health Plan Defendants finally informed Health Plan Participants that the Health Plan had been cancelled.

68. On or about June 11, 2026, the Health Plan Defendants told Health Plan Participants that they would refund all employee premiums withheld and not remitted during the previous several months.

69. At no time have the Health Plan Defendants offered to pay for Health Plan bills incurred by Health Plan Participants between May 1 and June 11, 2026.

70. On or about June 12, 2026, the Health Plan Defendants finally stopped withholding employee contributions from Health Plan Participants' paychecks.

71. As of the date of this Complaint, the Health Plan Defendants have not refunded unremitted employee contributions to Named Plaintiffs and similarly situated Health Plan Participants.

72. As of the date of this Complaint, the Health Plan Defendants have not paid numerous covered medical claims incurred by Named Plaintiffs and similarly situated Health Plan Participants.

**E. Health Plan Class Action Allegations**

73. Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants and beneficiaries of the Health Plan.

74. The Health Plan Class is defined as follows:

> All current and former Health Plan participants and beneficiaries from June 21, 2020 through resolution of this matter, excluding the Health Plan's fiduciaries, any beneficiary whose Health Plan benefits derive from a Health Plan fiduciary's participation in the Health Plan, the officers and directors of Defendant Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in

12

which a Health Plan Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

75. The members of the Health Plan Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 50. The exact number of Health Plan participants and beneficiaries, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), as well as their identities, can be determined from the Health Plan Defendants' records.

76. The issues of liability are common to all members of the Health Plan Class and are capable of common answers as those issues primarily focus on the Health Plan Defendants' acts (or failure to act). Questions of law and fact common to the Health Plan Class as a whole include, but are not limited to, the following:

   i.  Whether the Health Plan Defendants withheld employee premiums but did not remit the premiums to the Health Plan;

   ii.  Whether the Health Plan Defendants failed to remit the employer premiums to the Health Plan;

   iii.  Whether the Health Plan Defendants committed a material misrepresentation by failing to inform Health Plan participants that they had not remitted the withheld employee premiums to the Health Plan;

   iv.  Whether the Health Plan Defendants committed a material misrepresentation by failing to inform Health Plan participants that they had not remitted the employer premiums to the Health Plan;

   v.  Whether the Health Plan Defendants have failed to inform Health Plan

13

participants of their COBRA rights;

vi. The amount of losses suffered by the Health Plan as a result of the Health Plan Defendants' fiduciary violations and/or other appropriate equitable relief.

77. The questions of law or fact that are common to the Health Plan Class predominate over any questions affecting only individual members. The primary questions that will determine the Health Plan Defendants' liability to the Health Plan Class, listed above, are common to the Health Plan Class as a whole, and predominate over any questions affecting only individual Health Plan Class members.

78. Named Plaintiffs' claims are typical of the claims of other members of the Health Plan Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by the Health Plan Defendants and are based on the same legal theories as the claims of other members of the Health Plan Class.

79. Named Plaintiffs and the Health Plan Class have all been injured in that they have been harmed due to the Health Plan Defendants' common actions and inactions in regard to the unremitted and untimely remitted premiums and unpaid claims. The Health Plan Defendants' corporate wide policies and practices affected the Health Plan Class similarly, and the Health Plan Defendants benefited from the same type of wrongful acts as to each of the Health Plan Class members.

80. Because Named Plaintiffs seek relief on behalf of the Health Plan pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2), their claims are not only typical

of, but the same as, a claim under § 502(a)(2) brought by any other Health Plan Class member.

81. Named Plaintiffs will fairly and adequately protect the interests of the Health Plan Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Health Plan Class members.

82. The Health Plan Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Health Plan Class.

83. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, Office of the Solicitor ("SOL"), has extensive experience in complex litigation, including numerous ERISA cases involving failure to remit premiums and material misrepresentations. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

84. Named Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

85. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Health Plan Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Health Plan Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

86. Additionally, fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the plans and their participants and beneficiaries. This portion of the action challenges whether the Named Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the Health Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Health Plan.

87. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether the Health Plan Defendants fulfilled their fiduciary obligations to the Health Plan would, as a practical matter, be dispositive of the interests of the other participants in the Health Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Health Plan Class.

88. Because the Health Plan Defendants have acted or refused to act on grounds generally applicable to the Health Plan Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Health Plan Class as a whole.

89. No other litigation concerning this controversy has been filed by any other members of the Health Plan Class.

**COUNTS I, II, AND III: BREACH OF FIDUCIARY DUTY, HEALTH PLAN: ERISA SECTIONS 404(A)(1)(A), (B), & (D), 29 U.S.C. §§ 1104(A), (B), & (D)**

90. Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

91. The Health Plan Defendants are and acted as fiduciaries of the Health Plan.

92. As fiduciaries of the Health Plan, the Health Plan Defendants had the duties set forth in in ERISA sections 404, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), including but not limited to (A) to discharge their duties solely in the interests of Health Plan participants and their beneficiaries and for the exclusive purpose of providing benefits to them or defraying reasonable expenses of administering the Health Plan; (B) to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and (D) to discharge their duties in accordance with the documents and instruments governing the Health Plan.

93. Through its conduct described above, Defendants Safe & Secure, Nicholson, and John Doe Plan Fidcuiary(s) breached their fiduciary duties by, among other things:

   i.  Failing to act solely in the interest of the participants and beneficiaries of the Health Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Health Plan's administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

   ii.  Failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

iii. Failing to act in accordance with the documents and instruments governing the Health Plan, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

94. As a result of such breaches, the Health Plan Defendants have caused monetary loss to Named Plaintiffs, the Health Plan, and similarly situated Health Plan participants, including stolen plan assets and unpaid medical claims. Under ERISA Sections 409 and 502(a)(2), the Health Plan Defendants, as fiduciaries, are individually liable for losses caused by their fiduciary breaches. Accordingly, Named Plaintiffs seeks relief against the Health Plan Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Health Plan.

## COUNT IV: PROHIBITED TRANSACTIONS, HEALTH PLAN: ERISA SECTION 406, 29 U.S.C. § 1106

95. Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

96. Section 406(a)(1) of ERISA prohibits certain transactions between benefit plans and "parties in interest," a term defined to include plan fiduciaries, plan sponsors, and persons "providing services to such plan." *See* 29 U.S.C. §§ 1002(14)(A)–(B), 1106(a)(1). This provision supplements the fiduciary's general duty of loyalty by categorically barring certain transactions deemed likely to injure the ERISA-covered plan.

18

97. Immediately upon being withheld from Health Plan participants' paychecks, the premium payments became assets belonging to the Health Plan.

98. By failing to forward these premiums to the Health Plan, the Health Plan Defendants engaged in the following transactions prohibited by ERISA:

    i. Caused the Health Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Health Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

    ii. Dealt with assets of the Health Plan in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

    iii. Acted on behalf of a party whose interests are adverse to the interests of the Health Plan or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

99. As a result of their participation in these prohibited transactions, the Health Plan Defendants have caused monetary loss to Named Plaintiffs, the Health Plan, and similarly situated Health Plan participants, including stolen plan assets and unpaid medical claims. Under ERISA Sections 409 and 502(a)(2), The Health Plan Defendants, as fiduciaries, are individually liable for losses caused by their participation in prohibited transactions. Accordingly, Named Plaintiffs seeks relief against Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Health Plan.

## COUNT V: FAILURE TO HOLD HEALTH PLAN ASSETS IN TRUST: ERISA SECTION 403, 29 U.S.C. § 1103

100. Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

101. Through their conduct, the Health Plan Defendants failed to ensure that all assets of the Health Plan were held in trust and did not inure to the benefit of the Health Plan Defendants, in violation of ERISA § 403(a) and (c)(1), 29 U.S.C. § 1103(a) and (c)(1).

102. As a result of their failure to hold all Health Plan assets in trust, the Health Plan Defendants have caused monetary loss to Named Plaintiffs, the Health Plan, and similarly situated Health Plan participants, including stolen plan assets and unpaid medical claims. Under ERISA Sections 409 and 502(a)(2), the Health Plan Defendants, as fiduciaries, are individually liable for losses caused by this breach. Accordingly, Named Plaintiffs seeks relief against the Health Plan Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Health Plan.

## COUNT VI: LIABILITY FOR BREACH OF CO-FIDUCIARY, HEALTH PLAN: ERISA SECTION 405, 29 U.S.C. § 1105

103. Plaintiffs incorporate and re-plead by reference the previous allegations as though fully set forth herein.

104. By participating knowingly in the fiduciary breaches and prohibited transactions of one another, knowing such acts or omissions to be breaches of fiduciary duty, Defendants Safe & Secure, Nicholson, and John Doe Plan Fiduciary(s) are each liable for the others' breaches of duty, pursuant to Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(A)(1).

105.    The Health Plan Defendants all failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and thereby enabled each other to commit breaches of ERISA.  Therefore, each Health Plan Defendant is liable for every other Health Plan Defendant's breaches of fiduciary duty, pursuant to Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2).

106.    The Health Plan Defendants, as fiduciaries to the Health Plan, by failing to make reasonable efforts under the circumstances to remedy the breaches of which they had knowledge, are each liable for the others' fiduciary breaches, pursuant to Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

## III.    401(K) PLAN ALLEGATIONS

### A. General 401(k) Plan Allegations

107.    This portion of the action arises under Title I of ERISA and is brought by Plaintiffs under ERISA §§ 502(a)(1), (2), and (3), 29 U.S.C. §§ 1132(a)(1), (2), and (3), to recover benefits due to them under the terms of the 401(k) Plan, to enjoin acts and practices that violate the provisions of Title I of ERISA and the terms of the 401(k) Plan, to obtain appropriate equitable relief to redress violations of ERISA and the 401(k) Plan, and to enforce the provisions of ERISA.

108.    This portion of the action is filed against Defendant Safe & Secure, Defendant Nicholson, Defendant(s) John Doe Plan Fiduciary(s), and the 401(k) Plan.  (collectively, "401(k) Plan Defendants").

109.    Among other employee benefits, the 401(k) Plan Defendants offer retirement benefits to employees 401(k) plan sponsored by Defendant Safe & Secure.

110.    The 401(k) Plan is a defined contribution plan under IRC § 401(k), 26 U.S.C. § 401(k), established on January 1, 2024.

111.    The 401(k) Plan assets are, and at all relevant times have been, participant directed and invested in fixed and variable return funds.

112.    From approximately January 1, 2024 through approximately January 20, 2026, the 401(k) Plan's asset custodian was Guideline, Inc. ("Guideline").

113.    On or about January 20, 2026, Vestwell Holdings, Inc. ("Vestwell") acquired Guideline, including the 401(k) Plan.

114.    The 401(k) Plan has two options: a pre-tax Traditional 401(k) ("Traditional"), and a post-tax Roth IRA ("Roth").

115.    The 401(k) Plan allows participants to make contributions through payroll withholdings to either or both of the Traditional and the Roth ("employee contributions").

116.    There is no difference in how the 401(k) Plan processes the Traditional and the Roth aside from tax treatment irrelevant to the instant matter.

117.    The 401(k) Plan allows employee contributions to either or both of the Traditional and Roth up to the lesser of 100% of employee compensation or the annual IRS dollar limit.

118.    The 401(k) Plan requires Defendant Safe & Secure to match employee contributions up to certain limits ("employer contributions").

22

119.   The 401(k) Plan requires employer contributions of 100% of employee contributions up to 1% of employee compensation.

120.   The 401(k) Plan requires employer contributions of 50% of employee contributions between 1 and 6% of employee compensation.

121.   Aside from the required employer contributions, the 401(k) Plan allows Safe & Secure to provide annual profit sharing contributions.

122.   Upon information and belief, Safe & Secure has never provided profit sharing contributions to the 401(k) Plan.

123.   At all relevant times, the 401(k) Plan Defendants deducted set contributions from Named Plaintiffs' and other 401(k) Plan Participants' weekly paychecks and were responsible for timely remitting these employee contributions to accounts controlled by Guideline and Vestwell for the 401(k) Plan Participants' chosen investments.

124.   At all relevant times, the 401(k) Plan Defendants were responsible for timely remitting matching employer contributions to accounts controlled by Guideline and Vestwell for the 401(k) Plan Participants' chosen investments.

125.   At various times before approximately January 20, 2026, the 401(k) Plan Defendants failed to enroll some 401(k) Plan Participants with Guideline, prohibiting these 401(k) Plan Participants from accessing their assets.

126.   Nonetheless, at various times before approximately January 20, 2026, the 401(k) Plan Defendants withheld the employee contributions of these 401(k) Plan Participants, but failed to remit the withholdings to the (not properly established) Guideline accounts.

23

127. Further, at various times before approximately January 20, 2026, the 401(k) Plan failed to remit the employer contributions to the (not properly established) Guideline accounts.

128. At various times since approximately January 20, 2026, the 401(k) Plan Defendants failed to enroll some 401(k) Plan Participants with Vestwell, prohibiting these 401(k) Plan Participants from accessing their assets.

129. Nonetheless, at various times since approximately January 20, 2026, the 401(k) Plan Defendants withheld the employee contributions of these 401(k) Plan Participants, but failed to remit the withholdings to the (not properly established) Vestwell accounts.

130. Further, at various times since approximately January 20, 2026, the 401(k) Plan failed to remit the employer contributions to the (not properly established) Vestwell accounts.

131. On information and belief, starting on or about March 1, 2026, the Health Plan Defendants ceased remitting withheld employee and matching employer premiums to Vestwell for all 401(k) Plan Participants.

132. Plaintiffs, 401(k) Plan participants, suffered losses, including stolen wages and benefits and unrealized gains.

## B. Jurisdiction and Venue

133. This court has jurisdiction over this portion of the action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

134. The 401(k) Plan is an employee pension plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

135. Venue of this portion of action lies in the Southern District of Ohio pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because at all relevant times, the 401(k) Plan has been administered in Upper Arlington, Franklin County, within this district.

## C. Parties

136. Plaintiff Abdelkamel was, at all relevant times from January 27, 2026 through June 12, 2026, a 401(k) Plan Participant.

137. Plaintiff Bair was, at all relevant times from July 10, 2024 through April 17, 2026, a 401(k) Plan Participant.

138. Plaintiff Gerber is, and at all relevant times since October 5, 2025 has been, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Gerber with Guidelines or Vestwell, preventing her from accessing her accounts.

139. Plaintiff Goding is, and at all relevant times since September 17, 2024 has been, a 401(k) Plan Participant.

140. Plaintiff Graham was, at all relevant times from November 29, 2023 through May 31, 2026, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Graham with Vestwell, preventing her from accessing her accounts.

141. Plaintiff Hileman was, at all relevant times from September 25, 2025 through April 19, 2026, a 401(k) Plan Participant.

142. Plaintiff Huff is, and at all relevant times since February 9, 2026 has been, a 401(k) Plan Participant.

25

143. Plaintiff Lanter was, at all relevant times from December 3, 2025 through February 27, 2026, a 401(k) Plan Participant.

144. Plaintiff Miller is, and at all relevant times since July 17, 2025 has been, a 401(k) Plan Participant.

145. Plaintiff Moyer was, at all relevant times from August 20, 2025 through May 29, 2026, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Moyer with Vestwell, preventing her from accessing her accounts.

146. Plaintiff O'Hara is, and at all relevant times since April 14, 2025 has been, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff O'Hara with Vestwell, preventing him from accessing his accounts.

147. Plaintiff Pritchett was, and at all relevant times from July 6, 2025 through May 15, 2026, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Pritchett with Guidelines or Vestwell, preventing her from accessing her accounts.

148. Plaintiff Jared Riblet is, and at all relevant times since February 17, 2025 has been, a 401(k) Plan Participant.

149. Plaintiff Jarrius Riblet was, at all relevant times from May 21, 2025 through June 5, 2026, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Jarrius Riblet with Guidelines, preventing him from accessing his accounts.

150. Plaintiff Romans was, at all relevant times from April 4, 2024 through July 10, 2025, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll

Plaintiff Romans with Guidelines, preventing her from accessing her accounts.

151. Plaintiff Tackett is, and at all relevant times since February 24, 2025 has been, a 401(k) Plan Participant.

152. Plaintiff Winemiller was, at all relevant times from May 15, 2024 through August 1, 2025, a 401(k) Plan Participant. The 401(k) Plan Defendants did not enroll Plaintiff Winemiller with Vestwell, preventing her from accessing her accounts.

153. Defendant Safe & Secure is, and at all relevant times has been, a for-profit company based in Upper Arlington, Franklin County, within the jurisdiction of this Court.

154. Defendant Safe & Secure provides, and at all relevant times has provided, home healthcare services, independent living assistance, workforce programs and training, and social activities throughout Ohio, with its corporate office in Upper Arlington.

155. At all relevant times Defendant Safe & Secure was and is the 401(k) Plan Sponsor under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

156. On October 20, 2025, the 401(k) Plan filed its Form 5500 with the U.S. DOL, naming Guideline as the 401(k) Plan Administrator.

157. Upon information and belief, on or about January 20, 2026, Vestwell acquired Guideline, rendering the October 20, 2025 Form 5500 no longer accurate.

158. Upon information and belief, on or about March 1, 2026, the 401(k) Plan Defendants ceased remitting employee and employer contributions to the

27

401(k) Plan, ceasing Guideline / Vestwell's theoretical role as 401(k) Plan Administrator.

159. Upon information and belief, absent a designated Administrator since approximately March 1, 2026, Defendant Safe & Secure has been the 401(k) Plan Administrator under ERISA § 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii) since that time.

160. At all relevant times, Defendant Safe & Secure exercised discretionary authority and control respecting the management and disposition of the 401(k) Plan and its assets and exercised discretionary authority and responsibility in the administration of the 401(k) Plan and thus was and is a fiduciary of the 401(k) Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

161. For the reasons identified above, at all relevant times, Defendant Safe & Secure was and is a party in interest to the 401(k) Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

162. At all relevant times, Defendant Safe & Secure was and is an employer whose employees are covered by the 401(k) Plan, and so was and is a party in interest to the 401(k) Plan within the meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

163. Upon information and belief, the 401(k) Plan is an employee pension benefit plan, established on January 1, 2024.

164. The 401(k) Plan is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

165. Upon information and belief, Defendant Nicholson is an individual who, at all relevant times, lived and worked in Upper Arlington, Franklin County, within this Court's jurisdiction.

166. At all relevant times, Defendant Nicholson is and has been Defendant Safe & Secure's owner and CEO, and so was and is a party in interest to the 401(k) Plan within the meaning of ERISA §§ 3(14)(E) and (H), 29 U.S.C. §§ 1002(14)(E) and (H).

167. At all relevant times Defendant Nicholson exercised discretionary authority and control respecting the management and disposition of the 401(k) Plan and its assets and exercised discretionary authority and responsibility in the administration of the 401(k) Plan.

168. Thus, Defendant Nicholson was and is a fiduciary of the 401(k) Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest to the 401(k) Plan within the meaning of ERISA §§ 3(14)(A), 29 U.S.C. §§ 1002(14)(A).

169. Upon information and belief, additional individuals may be named or functional fiduciaries of the 401(k) Plan. Accordingly, they are named as John Doe Plan Fiduciary(s) pending determination of their identities.

## D. **401(k) Plan Class Action Allegations**

170. Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants and beneficiaries of the 401(k) Plan.

171. The 401(k) Plan Class is defined as follows:

> All current and former 401(k) Plan participants and beneficiaries from June 21, 2020 through resolution of this matter, excluding the 401(k) Plan's fiduciaries, any

29

beneficiary whose 401(k) Plan benefits derive from a 401(k) Plan fiduciary's participation in the 401(k) Plan, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an 401(k) Plan Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

172. The members of the 401(k) Plan Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 50. The exact number of 401(k) Plan participants and beneficiaries, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), as well as their identities, can be determined from the 401(k) Plan Defendants' records.

173. The issues of liability are common to all members of the 401(k) Plan Class and are capable of common answers as those issues primarily focus on the 401(k) Plan Defendants' acts (or failure to act). Questions of law and fact common to the 401(k) Plan Class as a whole include, but are not limited to, the following:

i. Whether the 401(k) Plan Defendants withheld 401(k) Plan participants' contributions but did not remit the employee contributions to the 401(k) Plan;

ii. Whether the 401(k) Plan Defendants failed to remit the matching employer contributions to the 401(k) Plan;

iii. Whether the 401(k) Plan Defendants failed to enroll some 401(k) Plan Participants with Guideline;

iv. Whether the 401(k) Plan Defendants failed to enroll some 401(k) Plan Participants with Vestwell;

v. The amount of losses suffered by the 401(k) Plan as a result of the 401(k) Plan Defendants' fiduciary violations and/or other appropriate equitable relief.

174. The questions of law or fact that are common to the 401(k) Plan Class predominate over any questions affecting only individual members. The primary questions that will determine the 401(k) Plan Defendants' liability to the 401(k) Plan Class, listed above, are common to the 401(k) Plan Class as a whole, and predominate over any questions affecting only individual 401(k) Plan members.

175. Named Plaintiffs' claims are typical of the claims of other members of the 401(k) Plan Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by 401(k) Plan Defendants and are based on the same legal theories as the claims of other members of the 401(k) Plan Class.

176. Named Plaintiffs and the 401(k) Plan Class have all been injured in that they have been harmed due to the 401(k) Plan Defendants' common actions and inactions in regard to the unremitted and untimely remitted premiums and unpaid claims. The 401(k) Plan Defendants' corporate wide policies and practices affected the 401(k) Plan Class similarly, and the 401(k) Plan Defendants benefited from the same type of wrongful acts as to each of the 401(k) Plan Class members.

177. Because Named Plaintiffs seek relief on behalf of the 401(k) Plan pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2), their claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other 401(k) Plan Class member.

178. Named Plaintiffs will fairly and adequately protect the interests of the 401(k) Plan Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other 401(k) Plan Class members.

179. The 401(k) Plan Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the 401(k) Plan Class.

180. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous ERISA cases involving failure to remit contributions. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

181. Named Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

182. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring 401(k) Plan Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many 401(k) Plan Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

183. Additionally, fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the plans and their participants and beneficiaries. This

32

portion of the action challenges whether the Named Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the 401(k) Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the 401(k) Plan.

184.    Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether the 401(k) Plan Defendants fulfilled their fiduciary obligations to the 401(k) Plan would, as a practical matter, be dispositive of the interests of the other participants in the 401(k) Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the 401(k) Plan Class.

185.    Because the 401(k) Plan Defendants have acted or refused to act on grounds generally applicable to the 401(k) Plan Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the 401(k) Plan Class as a whole.

186.    No other litigation concerning this controversy has been filed by any other members of the 401(k) Plan Class.

## COUNTS VII, VIII, AND IX: BREACH OF FIDUCIARY DUTY, 401(K) PLAN: ERISA SECTIONS 404(A)(1)(A), (B), & (D), 29 U.S.C. §§ 1104(A)(1)(A), (B), & (D)

187.    Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

188.    The 401(k) Plan Defendants are and acted as fiduciaries of the 401(k) Plan.

189. As fiduciaries of the 401(k) Plan, the 401(k) Plan Defendants had the duties set forth in in ERISA sections 404, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), including but not limited to (A) to discharge their duties solely in the interests of 401(k) Plan participants and their beneficiaries and for the exclusive purpose of providing benefits to them or defraying reasonable expenses of administering the 401(k) Plan; (B) to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and (D) to discharge their duties in accordance with the documents and instruments governing the 401(k) Plan.

190. Through its conduct described above, Defendants Safe & Secure, Nicholson, and John Doe Plan Fiduciary(s) breached their fiduciary duties by, among other things:

   i.  Failing to act solely in the interest of the participants and beneficiaries of the 401(k) Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the 401(k) Plan's administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

   ii. Failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

34

iii. Failing to act in accordance with the documents and instruments governing the 401(k) Plan, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

191.    As a result of such breaches, the 401(k) Plan Defendants have caused monetary loss to Named Plaintiffs, the 401(k) Plan, and similarly situated 401(k) Plan participants, including stolen plan assets.  Under ERISA Sections 409 and 502(a)(2), the 401(k) Plan Defendants, as fiduciaries, are individually liable for losses caused by their fiduciary breaches.  Accordingly, Named Plaintiffs seeks relief against the 401(k) Plan Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the 401(k) Plan.

## COUNT X: PROHIBITED TRANSACTIONS, 401(K) PLAN: ERISA SECTION 406, 29 U.S.C. § 1106

192.    Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

193.    Section 406(a)(1) of ERISA prohibits certain transactions between benefit plans and "parties in interest," a term defined to include plan fiduciaries, plan sponsors, and persons "providing services to such plan." *See* 29 U.S.C. §§ 1002(14)(A)–(B), 1106(a)(1). This provision supplements the fiduciary's general duty of loyalty by categorically barring certain transactions deemed likely to injure the ERISA-covered plan.

194.    Immediately upon being withheld from 401(k) Plan participants' paychecks, the contributions became assets belonging to the 401(k) Plan.

195. Additionally, under the 401(k) Plan Documents, when matching contributions were due and owing to the 401(k) Plan, these contributions became assets belonging to the 401(k) Plan.

196. By failing to forward these contributions to the 401(k) Plan, the 401(k) Plan Defendants engaged in the following transactions prohibited by ERISA:

    i.  Caused the 401(k) Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the 401(k) Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

    ii.  Dealt with assets of the 401(k) Plan in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

    iii.  Acted on behalf of a party whose interests are adverse to the interests of the 401(k) Plan or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

197. As a result of their participation in these prohibited transactions, the 401(k) Plan Defendants have caused monetary loss to Named Plaintiffs, the 401(k) Plan, and similarly situated 401(k) Plan participants, including stolen plan assets.  Under ERISA Sections 409 and 502(a)(2), The 401(k) Plan Defendants, as fiduciaries, are individually liable for losses caused by their participation in prohibited transactions.  Accordingly, Named Plaintiffs seeks relief against Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the 401(k) Plan.

**COUNT XI: FAILURE TO HOLD 401(K) PLAN ASSETS IN TRUST:**

**ERISA SECTION 403, 29 U.S.C. § 1103**

198. Plaintiffs incorporate and re-plead by reference the previous allegations, as though fully set forth herein.

199. Through their conduct, the 401(k) Plan Defendants failed to ensure that all assets of the 401(k) Plan were held in trust and did not inure to the benefit of the 401(k) Plan Defendants, in violation of ERISA § 403(a) and (c)(1), 29 U.S.C. § 1103(a) and (c)(1).

200. As a result of their failure to hold all 401(k) Plan assets in trust, the 401(k) Plan Defendants have caused monetary loss to Named Plaintiffs, the 401(k) Plan, and similarly situated 401(k) Plan participants, including stolen plan assets. Under ERISA Sections 409 and 502(a)(2), the 401(k) Plan Defendants, as fiduciaries, are individually liable for losses caused by this breach. Accordingly, Named Plaintiffs seeks relief against the 401(k) Plan Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the 401(k) Plan.

## COUNT XII: LIABILITY FOR BREACH OF CO-FIDUCIARY, 401(K) PLAN: ERISA SECTION 405, 29 U.S.C. § 1105

201. Plaintiffs incorporate and re-plead by reference the previous allegations as though fully set forth herein.

202. By participating knowingly in the fiduciary breaches and prohibited transactions of one another, knowing such acts or omissions to be breaches of fiduciary duty, Defendants Safe & Secure, Nicholson, and John Doe Plan Fiduciary(s) are each liable for the others' breaches of duty, pursuant to Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(A)(1).

37

203. The 401(k) Plan Defendants all failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and thereby enabled each other to commit breaches of ERISA.  Therefore, each 401(k) Plan Defendant is liable for every other 401(k) Plan Defendant's breaches of fiduciary duty, pursuant to Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2).

204. The 401(k) Plan Defendants, as fiduciaries to the 401(k) Plan, by failing to make reasonable efforts under the circumstances to remedy the breaches of which they had knowledge, are each liable for the others' fiduciary breaches, pursuant to Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

## IV. VOLUNTARY PLANS

### A. General Voluntary Plans Allegations

205. Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants and beneficiaries of the Voluntary Plans.

206. Under 29 C.F.R. § 2510.3-1(j), certain employer-offered insurance plans are not considered "employee welfare benefit plans" and thus are not covered by ERISA.

207. Such non-ERISA plans, known as Voluntary Plans, meet four criteria:

i. The employer makes no contribution to the Plan;

ii. Employee participation is entirely voluntary;

iii. The employer's only functions are to allow the insurer to publicize to employees, to collect premiums through payroll withholdings, and to remit the premiums to the insurer; and

38

iv. The employer receives no consideration other than reasonable compensation for administrative services rendered. *Id.*

208. Defendants Safe & Secure and Nicholson (collectively, "Voluntary Plans Defendants"), offered their employees four voluntary plans at issue here:[1] a Life Insurance Plan, a Short Term Disability ("STD") Plan, a Long Term Disability ("LTD") Plan, and an Accidental Death and Dismemberment ("AD&D") Plan. (Collectively, "Voluntary Plans").

209. Colonial Life and Accident Insurance Company ("Colonial") provided the insurance coverage under the Voluntary Plans.

210. None of the Voluntary Plans were covered by ERISA:

i. The Voluntary Plan Defendants did not make any contributions for the Voluntary Plans;

ii. Employee participation in the Voluntary Plans was entirely voluntary;

iii. The Voluntary Plan Defendants did not play any role in the voluntary plans other than allowing Colonial to publicize the Voluntary Plans to Safe & Secure employees, to collect premiums through payroll withholdings, and to remit the premiums to Colonial; and

iv. The Voluntary Plan Defendants did not receive any consideration for the voluntary plans other than reasonable consideration for administrative services rendered.

211. For each of the Voluntary Plans, Safe & Secure employees elected whether to participate, both for themselves and for their spouses and children.

---

[1] The Voluntary Plan Defendants also offered two voluntary plans not at issue: A Dental Plan provided by Unum Group, and a Vision Plan provided by Vision Service Plan (VSP). On information and belief, as of the date of this complaint those plans have not had unremitted premiums.

212. For each Voluntary Plan election, the Voluntary Plan Defendants withheld premiums from Plan participants' paychecks issued on weekly paydays.

213. For each Voluntary Plan election, the Voluntary Plan Defendants were required to remit the withheld premiums to the appropriate Voluntary Plan provider.

214. On information and belief, for each Voluntary Plan, the Voluntary Plan Defendants failed to remit or timely remit withheld Voluntary Plan participant premiums since approximately March 1, 2026.

215. By failing to remit or timely remit withheld Voluntary Plan participant premiums, the Voluntary Plan Defendants violated the Ohio Prompt Pay Act, O.R.C. § 4113.15(A) ("OPPA").

## B. Jurisdiction and Venue

216. This court has supplemental jurisdiction over this portion of the action pursuant to 28 U.S.C. § 1367 because the Ohio state law claims are so related to the ERISA claims as to form part of the same case or controversy.

217. Venue of this portion of action lies in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because the Voluntary Plan Defendants are domiciled in Upper Arlington, Franklin County, within this district and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## C. Parties

218. Plaintiff Bair was, at all relevant times from July 10, 2024 through April 17, 2026, a Participant in the Life Insurance Plan.

40

219. Plaintiff Gerber is, and at all relevant times since October 5, 2025 has been, a Participant in the Life Insurance Plan, the STD Plan, and the LTD Plan.

220. Plaintiff Goding is, and at all relevant times since September 17, 2024 has been, a Participant in the Life Insurance Plan.

221. Plaintiff Graham was, at all relevant times from November 29, 2023 through May 31, 2026, a Participant in the Life Insurance Plan, the STD Plan, the LTD Plan, and the AD&D Plan.

222. Plaintiff Graser is, at all relevant times since May 19, 2025, a Participant in the Life Insurance Plan (along with their spouse).

223. Plaintiff Huff is, and at all relevant times since February 9, 2026 has been, a Participant in the STD Plan.

224. Plaintiff Miller is, and at all relevant times since July 17, 2025 has been, a Participant in the Life Insurance Plan, the LTD Plan, and the AD&D Plan.

225. Plaintiff Moyer was, at all relevant times from August 20, 2025 through May 29, 2026, a Participant in the STD Plan, and the LTD Plan.

226. Plaintiff Pritchett was, and at all relevant times from July 6, 2025 through May 15, 2026, a Participant in the Life Insurance Plan (along with their child(ren)) the STD Plan, the LTD Plan, and the AD&D Plan.

227. Plaintiff Stanley Smallwood is, at all relevant times since November 30, 2023, a Participant in the Life Insurance Plan, the STD Plan, and the LTD Plan.

228. Plaintiff Vicki Smallwood is, at all relevant times since July 1, 2024, a Participant in the Life Insurance Plan, the STD Plan, and the LTD Plan.

229. Plaintiff Tackett is, and at all relevant times since February 24, 2025 has been, a Participant in the Life Insurance Plan, the STD Plan, the LTD Plan, and the AD&D Plan.

230. Plaintiff Winemiller was, at all relevant times from May 15, 2024 through August 1, 2025, a Participant in the Life Insurance Plan (along with their spouse), the STD Plan, the LTD Plan,.

231. At all relevant times, Defendant Safe & Secure was an employer within the meaning of Section 3(d) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), Article II, Section 34a of the Ohio Constitution, and Section (D)(2) of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03(D)(2).

232. At all relevant times, Defendant Nicholson is and has been Defendant Safe & Secure's owner and CEO.

233. At all relevant times, Defendant Nicholson actively supervised the day-to-day operations and management of Defendant Safe & Secure in relation to their employees, including but not limited to hiring, firing, and establishing Defendant Safe & Secure's compensation methods.

234. At all relevant times, Defendant Nicholson acted directly or indirectly in the interest of Defendant Safe & Secure in relation to their employees.

235. At all relevant times, Defendant Nicholson has been and is an "employer" within the meaning of the FLSA and Ohio law.

**D. Voluntary Plans Class Action Allegations**

42

236.  Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants and beneficiaries of the Voluntary Plans.

237.  The Voluntary Plans Class is defined as follows:

All current and former Voluntary Plans participants and beneficiaries from June 21, 2024 through resolution of this matter, excluding any executive involved in the process of withholding employee premiums for remittance to the Voluntary Plans, any beneficiary whose Voluntary Plans benefits derive from an executive involved in the process of withholding employee premiums for remittance to the Voluntary Plans, the officers and directors of Defendant Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

238.  The members of the Voluntary Plans Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 50. The exact number of Voluntary Plans participants and beneficiaries, as well as their identities, can be determined from the Voluntary Plans Defendants' records.

239.  The issues of liability are common to all members of the Voluntary Plans Class and are capable of common answers as those issues primarily focus on the Voluntary Plans Defendants' acts (or failure to act). Questions of law and fact common to the Voluntary Plans Class as a whole include, but are not limited to, the following:

i.  Whether the Voluntary Plans Defendants withheld Voluntary Plans participants' contributions but did not remit or timely remit the contributions to the Voluntary Plans;

43

ii. The number of paydays when the Voluntary Plans Defendants withheld but did not remit or timely remit the contributions to the Voluntary Plans; and

iii. The number of 30-day periods that passed before the Voluntary Plans Defendants remitted the withheld contributions to the Voluntary Plans.

240. The questions of law or fact that are common to the Voluntary Plans Class predominate over any questions affecting only individual members. The primary questions that will determine the Voluntary Plans Defendants' liability to the Voluntary Plans Class, listed above, are common to the Voluntary Plans Class as a whole, and predominate over any questions affecting only individual Voluntary Plans members.

241. Named Plaintiffs' claims are typical of the claims of other members of the Voluntary Plans Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Voluntary Plans Defendants and are based on the same legal theories as the claims of other members of the Voluntary Plans Class.

242. Named Plaintiffs and the Voluntary Plans Class have all been injured in that they have been harmed due to the Voluntary Plans Defendants' common actions and inactions in regard to the unremitted and untimely remitted premiums. The Voluntary Plans Defendants' corporate wide policies and practices affected the Voluntary Plans Class similarly, and the Voluntary Plans Defendants benefited from the same type of wrongful acts as to each of the Voluntary Plans Class members.

44

243. Because Named Plaintiffs seek relief on behalf of the Voluntary Plans Class members pursuant to the OPPA, their claims are not only typical of, but the same as, a claim under OPPA brought by any other Voluntary Plans Class member.

244. Named Plaintiffs will fairly and adequately protect the interests of the Voluntary Plans Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Voluntary Plans Class members.

245. The Voluntary Plans Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Voluntary Plans Class.

246. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous cases involving failure to remit contributions and cases involving failure to timely pay wages. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

247. Named Plaintiffs have retained counsel competent and experienced in complex class actions, the OPPA, and employee benefits litigation.

248. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Voluntary Plans Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Voluntary Plans Class members' claims are sufficiently

45

small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

249. Additionally, employers under the OPPA have a legal obligation to act consistently with respect to all similarly situated employees. This portion of the action challenges whether the Named Defendants acted consistently with their duties as employers or otherwise violated the OPPA as to the Voluntary Plans as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Voluntary Plans.

250. Resolving whether the Voluntary Plans Defendants properly remitted employee withholdings to the Voluntary Plans would, as a practical matter, be dispositive of the interests of the other participants in the Voluntary Plans even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Voluntary Plans Class.

251. Because the Voluntary Plans Defendants have acted or refused to act on grounds generally applicable to the Voluntary Plans Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Voluntary Plans Class as a whole.

252. No other litigation concerning this controversy has been filed by any other members of the Voluntary Plans Class.

46

## COUNT XIII: LIABILITY FOR VIOLATION OF THE

## OHIO PROMPT PAY ACT, VOLUNTARY PLANS: O.R.C. § 4113.15

253.  Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

254.  The OPPA provides that "[i]n the absence of a contest, court order or dispute, an employer who is party to an agreement to pay or provide fringe benefits to an employee or to make any employee authorized deduction becomes a trustee of any funds required by such agreement to be paid to any person, organization, or governmental agency from the time that the duty to make such payment arises. No person shall, without reasonable justification or excuse for such failure, knowingly fail or refuse to pay to the appropriate person, organization, or governmental agency the amount necessary to provide the benefits or accomplish the purpose of any employee authorized deduction, within thirty days after the close of the pay period during which the employee earned or had deducted the amount of money necessary to pay for the fringe benefit or make any employee authorized deduction. A failure or refusal to pay, regardless of the number of employee pay accounts involved, constitutes one offense for the first delinquency of thirty days and a separate offense for each successive delinquency of thirty days." O.R.C. § 4113.15(C).

255.  O.R.C. § 4113.15(D)(1) includes, within the definition of "wage" for the OPPA, "any deductions made pursuant to a written agreement for the purpose of providing the employee with any fringe benefits."

256.  O.R.C. § 4113.15(D)(2) then states that for the OPPA, "'[f]ringe benefits' includes but is not limited to health, welfare, or retirement benefits, whether

47

paid for entirely by the employer or on the basis of a joint employer-employee contribution, or vacation, separation, or holiday pay."

257. Named Plaintiffs bring this claim for violation of the OPPA on behalf of themselves and all Voluntary Plans Class members for which certification is sought pursuant to Fed. R. Civ. P. 23.

258. The Voluntary Plans are "fringe benefits" as defined in the OPPA.

259. Within the OPPA, withholdings for fringe benefits are considered "wages."

260. The Voluntary Plans Defendants withheld from the Named Plaintiffs and the Voluntary Plans Class members premiums intended to be remitted to the Voluntary Plans for the purposes of providing fringe benefits.

261. The Voluntary Plans Defendants failed to remit or timely remit the withholdings of the Named Plaintiffs and Voluntary Plans Class members to the Voluntary Plans.

262. By the Voluntary Plans Defendants failing to remit or timely remit the withholdings of the Named Plaintiffs and the Voluntary Plans Class members to the Voluntary Plans, Named Plaintiffs and the Voluntary Plans Class members were not timely paid all wages earned as required by the OPPA.

263. By the Voluntary Plans Defendants failing to timely pay all wages due under the OPPA to Named Plaintiffs and the Voluntary Plans Class Members, each Named Plaintiffs and Voluntary Plan Class member is entitled to repayment of the withheld premiums, as well as liquidated damages for each delinquency of thirty days and each successive delinquency of thirty days. O.R.C. § 4113.15(C).

264. Each Named Plaintiff and Voluntary Plan Class member is entitled to liquidated damages of 6% of the unpaid wage or two hundred dollars, whichever is greater, per delinquency. O.R.C. § 4113.15(B).

## V. WAGE-HOUR VIOLATIONS

### A. General Wage-Hour Allegations

265. This portion of the action arises the FLSA, 29 U.S.C. §§ 201 *et seq*., Article II, Section 34a of the Ohio Constitution, the OMFWSA, O.R.C. Chapter 4111, and the OPPA, O.R.C. § 4113.15.

266. This portion of the action is filed against Defendant Safe & Secure and Defendant Nicholson (collectively, "Wage-Hour Defendants").

### B. Jurisdiction and Venue

267. This Court has jurisdiction over Plaintiffs' federal wage-hour claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

268. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Wage-Hour Defendants are domiciled in Franklin County, Ohio, in this District and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Division.

269. This Court has supplemental jurisdiction over Plaintiffs' asserted state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the FLSA claims as to form part of the same case or controversy.

### C. Parties[2]

---

[2] Proposed definitions of each Wage-Hour Collective and Class are provided in the following sections.

270.   Plaintiff Bair was, at all relevant times from July 10, 2024 through January 27, 2025, an hourly House Manager. She did not join the previous lawsuit, *Cline v. Safe and Secure Homecare Corporation et al.* Plaintiff Bair is eligible to be a member of the Straight Time Pay Collective, the Straight Time Pay Class, the Scheduling Work Collective, and the Scheduling Work Class.

271.   Plaintiff Gerber is, and at all relevant times since March 8, 2026 has been, a Site Lead. Plaintiff Gerber is eligible to be a member of the Scheduling Work Collective and Scheduling Work Class.

272.   Plaintiff Graham was, at all relevant times from November 29, 2023 through July 2025, an hourly House Manager. She did not join the previous lawsuit, *Cline v. Safe and Secure Homecare Corporation et al.* Plaintiff Graham was, at all relevant times from July 2025 through January 22, 2026, a misclassified, salaried House Manager. Plaintiff Graham was, at all relevant times from January 22, 2026 through May 31, 2026, a Site Lead. Plaintiff Graham is eligible to join the Straight Time Pay Collective, Straight Time Pay Class, Misclassified Managers Collective, Misclassified Managers Class, Scheduling Work Collective, and Scheduling Work Class.

273.   Plaintiff Hileman was, at all relevant times from February 2, 2026 through April 19, 2026, a Site Lead. Plaintiff Hileman is eligible to join the Scheduling Work Collective and the Scheduling Work Class.

274.   Plaintiff Huff was, at all relevant times from February 9, 2026 to March 1, 2026, a misclassified, salaried House Manager. Plaintiff Huff is, and at all relevant times since May 10, 2026 has been, a Site Lead. Plaintiff Huff is eligible to join the Misclassified Managers Collective, the Misclassified

Managers Class, the Scheduling Work Collective and the Scheduling Work Class.

275. Plaintiff Miller was, at all relevant times from since July 17, 2025 through October 13, 2025, a Site Lead. Plaintiff Miller was, at all relevant times from October 13, 2025 through February 1, 2026, a misclassified, salaried House manager. Plaintiff Huff is eligible to join the Misclassified Managers Collective, the Misclassified Managers Class, the Scheduling Work Collective and the Scheduling Work Class.

276. Plaintiff Pritchett was, at all relevant times from July 6, 2025 through October 2025, was a salaried House Manager. Plaintiff Pritchett was, at all relevant times from January 1, 2026 through May 15, 2026, a hourly Site Lead.. When Plaintiff Pritchett stopped working for Defendants, the Wage-Hour Defendants reduced her rate of pay to minimum wage for her final two pay periods. Plaintiff Pritchett is eligible to join the Retroactive Pay Reductions Collective, the Retroactive Pay Reductions Class, the Misclassified Managers Collective, the Misclassified Managers Class, the Scheduling Work Collective, and the Scheduling Work Class.

277. Plaintiff Jarrius Riblet was, at all relevant times from May 21, 2025 through June 5, 2026, a direct care staff member. When Plaintiff Jarrius Riblet stopped working for Defendants, the Wage-Hour Defendants reduced his rate of pay to minimum wage for his final two pay periods. Plaintiff Jarrius Riblet is eligible to join the Retroactive Pay Reductions Collective and the Retroactive Pay Reductions Class.

278. Plaintiff Winemiller was, at all relevant times from November 25, 2024 through August 1, 2025, a misclassified, salaried Operations Manager whose direct care hours exceeded her managerial hours. Plaintiff Winemiller was, from June 1, 2024 through November 25, 2024, an hourly House Manger, and she joined the previous litigation in *Cline v. Safe and Secure Homecare Corporation et al.*. Plaintiff Winemiller is eligible to join the Misclassified Managers Collective and the Misclassified Managers Class.

279. At all relevant times, Defendant Safe & Secure provided disabled adults with home healthcare services, independent living assistance, workforce programs and training, and social activities throughout Ohio.

280. At all relevant times, Defendant Safe & Secure is and has been an employer within the meaning of the FLSA and Ohio law.

281. At all relevant times, Defendant Nicholson is and has been Defendant Safe & Secure's owner and CEO.

282. At all relevant times, Defendant Nicholson actively supervised the day-to-day operations and management of Defendant Safe & Secure in relation to their employees, including but not limited to hiring, firing, and establishing Defendant Safe & Secure's compensation methods.

283. At all relevant times, Defendant Nicholson acted directly or indirectly in the interest of Defendant Safe & Secure in relation to their employees.

284. At all relevant times, Defendant Nicholson has been and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), Article II, Section 34a of the Ohio Constitution, and Section (D)(2) of the OMFWSA, O.R.C. § 4111.03(D)(2).

285. At all relevant times, the Wage-Hour Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 213(r), in that the Wage-Hour Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose.

286. At all relevant times, the Wage-Hour Defendants employed Plaintiffs in commerce or in the production or handling of goods or materials that have been moved in or produced for commerce thereby affording coverage pursuant to Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1).

287. At all relevant times, the Wage-Hour Defendants had an average annual income exceeding $500,000.

### D. Retroactive Pay Reductions for Exiting Workers

288. Defendants' Employee Handbook states "Any employee who does not give a full 2-weeks notice of resignation will only be paid minimum wage for their last 2 pay deposits. Should an employee give a 2-weeks notice of resignation, they are expected to work the entire 2 weeks, showing up on time for every scheduled shift. If an employee gives a 2-week notice but does not work every scheduled shift during those 2 weeks [*sic*] will also be paid minimum wage for the last 2 pay deposits."

289. Under the FLSA, an employee's compensation becomes vested and is owed at the completion of the work performed. Future actions by the employee or employer have no bearing on the employer's responsibility to pay for work already performed by the employee at the previously established rate. Thus, retroactive reduction of an employee's rate to minimum wage as punishment

for an employee terminating their employment or missing a day of work contravenes the purpose and letter of the FLSA and OMFWSA.

290. Further, the Wage-Hour Defendants failed to pay employees at all for personal time off ("PTO") hours previously earned but taken during the final two pay periods of employment. For the same reasons as listed above, the retroactive non-payment for PTO time previously earned but taken during the final two pay periods contravenes the purpose and letter of the FLSA and OMFWSA.

### E. Failure to Pay Overtime for House Managers Before July 2025

291. Until July 2025, the Wage-Hour Defendants failed to pay an overtime premium for a group of employees known as house managers.

292. House managers spend the vast majority of their time performing direct care of clients, but also arrange work schedules for client sites and make appointments for clients.

293. Until July 2025, the Wage-Hour Defendants classified house managers as hourly employees.

294. Until July 2025, the Wage-Hour Defendants paid house managers straight time for all hours worked; that is, they failed to pay an overtime premium for hours worked over 40 in a workweek.

295. Additionally, the Wage-Hour Defendants failed to pay house managers at all for off-the-clock work of several hours a week where they had to arrange employee schedules and otherwise take phone calls, all at times they were not clocked in to work.

54

296.   On February 28, 2025, Defendants were sued in United States District Court, Southern District of Ohio under case *Cline v. Safe and Secure Homecare Corporation et al.*, Case No. 2:25-cv-193.

297.   Defendants Safe & Secure and Nicholson were both named defendants in *Cline*.

298.   *Cline* was a collective and class action complaint, alleging that the defendants failed to pay house managers an overtime premium for hours worked over 40 in a workweek.

299.   From review of the docket for *Cline*, it appears that 12 employees opted in to a collective action settlement.

300.   During the pendency of *Cline*, the defendants paid back wages to some employees before they could opt in to the case.

301.   Following an apparent settlement, and *Cline* was dismissed with prejudice on January 28, 2026.

302.   In early 2026, Defendant Nicholson conducted a group call with numerous house managers who had not opted-in to *Cline*. He did not inform the house managers about the lawsuit, but did inform them they would be compensated for unpaid overtime from their time as house managers. It is not clear if Defendants have paid the unpaid overtime Nicholson promised to pay house managers who did not opt into *Cline*.

## F.   Misclassification of Managers Since July 2025

303.   In July 2025, while *Cline* was pending, Defendants changed the classification of house managers to non-exempt (from overtime regulations) to exempt.

55

304.    The duties of house managers have not changed in several years, including at the time of their change to exempt status in July 2025.

305.    House managers cannot hire, fire, or discipline.

306.    House managers have no input on employee wages or promotions.

307.    House managers spend the vast majority of their work in direct care work with the clients, the same work as hourly direct care staff.

308.    House managers only spend a few hours a week on so-called "manager" work, setting employee schedules and setting up appointments and rides for clients. Of these tasks, only setting the employee schedule involves any sort of supervisory duties.

309.    House managers spend most of the time they are setting employee schedules off-the-clock, when they are called during "non-work" hours to arrange missed shift coverage for an employee.

310.    There is little difference, if any, between the performed by salaried house managers and hourly site leads.

311.    House managers have, since July 2025, regularly worked more than 40 hours in workweeks.

312.    Accordingly, since July 2025, house managers have been misclassified as overtime exempt.

313.    Additionally, at all relevant times, many operations managers and workshop managers also perform direct service work with clients.

314.    As salaried supervisors, operations managers and workshop managers do not get paid at all for hours spent performing direct service work with clients.

56

315. Some operations managers and workshop managers work so many direct service hours that they do more direct service work than supervisory work.

316. Those operations managers and workshop managers who do more direct care work than supervisory work are also misclassified as overtime exempt, as their primary work duty is direct care.

## G. Not Paying for All Hours Worked by Site Leads

317. Site leads are hourly workers who have extra duties such as setting employee schedules.

318. At all relevant times, the Wage-Hour Defendants have not paid site leads at all for several hours a week of off-the-clock work setting employee schedules.

319. In weeks when site leads work more than 40 hours, site leads have not been paid at all for their time setting employee schedules, let alone being paid an overtime premium.

## H. Wage-Hour Collective Action Allegations

320. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

321. Plaintiffs bring this case as a collective action pursuant to 29 U.S.C. § 216(b) and O.R.C. § 4111.10(C) on behalf of themselves and other similarly situated persons who have similar claims under the FLSA and OMFWSA and who have been, are being, or will be, adversely affected by the Wage-Hour Defendant's unlawful conduct.

322. Given the four distinct manners in which Defendants violated wage-hour laws, Named Plaintiffs seek to represent four different collectives: (i) the

Retroactive Pay Reductions Collective, (ii) the Straight Time Pay Collective, (iii) the Misclassified Managers Collective, and (iv) the Scheduling Work Collective (collectively, the "Wage-Hour Collectives").

*i.    Retroactive Pay Reductions Collective*

323.    The first collective ("Retroactive Pay Reductions Collective") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former employees of the Wage-Hour Defendants who worked at any time from June 21, 2023 through final disposition of this matter, who worked 40 or more hours in a workweek and had their pay rate reduced to minimum wage during their final two pay periods of employment, or who were not paid at all for PTO previously earned but taken during their final two pay periods of employment, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

324.    This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) and O.R.C. § 4111.10(C) as to claims for unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA and OMFWSA. In addition to Named Plaintiffs, numerous current and former employees are similarly situated with regard to their claims against the Wage-Hour Defendants. Named Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

325. Such persons are "similarly situated" with respect to the Wage-Hour Defendants FLSA and OMFWSA violations in that all were all were subjected to and injured by Defendant's unlawful practice of failing to pay Named Plaintiffs and the Retroactive Pay Reductions Collective an overtime premium of one and a half times their regular rate for all hours that exceeded 40 in the workweek and not paying at all for some hours worked. All have the same claims against the Wage-Hour Defendants for unpaid minimum wage and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

326. The identities of the putative Retroactive Pay Reductions Collective are readily identifiable through the payroll records the Wage-Hour Defendants have maintained, and was required to maintain, pursuant to the FLSA and OMFWSA. 29 U.S.C. § 211(c); 29 C.F.R. § 215.2; Ohio Const. Art. II, § 34a; O.R.C. § 4111.14.

   ii. *Straight Time Pay Collective*

327. The second collective ("Straight Time Pay Collective") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

   All current and former employees of the Wage-Hour
   Defendants who worked 40 or more hours in a workweek at
   any time from June 21, 2023 through final disposition of this
   matter, who were not paid an overtime premium for all
   hours worked, excluding any executive involved in the
   process of paying payroll, the officers and directors of
   Defendants Safe & Secure (including any of their other
   subsidiaries or affiliates), or of any entity in which an officer
   or director has a controlling interest, and legal

59

representatives, successors, and assigns of any such excluded persons, and excluding all employees covered by the settlement of *Cline v. Safe and Secure Homecare Corporation et al.*, Southern District of Ohio Case No. 2:25-cv-193.

328. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Named Plaintiffs, numerous current and former employees are similarly situated with regard to their claims against the Wage-Hour Defendants. Named Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

329. Such persons are "similarly situated" with respect to the Wage-Hour Defendants FLSA violations in that all were all were subjected to and injured by Defendant's unlawful practice of failing to pay Named Plaintiffs and the Straight Time Pay Collective an overtime premium of one and a half times their regular rate for all hours that exceeded 40 in the workweek. All have the same claims against the Wage-Hour Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

330. The identities of the putative Straight Time Pay Collective are readily identifiable through the payroll records the Wage-Hour Defendants have maintained, and was required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 215.2;.

60

331. For any putative Straight Time Pay Collective members for whom the Wage-Hour Defendants later paid back wages, they are still eligible to join the Collective to recover liquidated damages.

*iii. Misclassified Managers Collective*

332. The third collective ("Misclassified Managers Collective") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former managers of the Wage-Hour Defendants who worked 40 or more hours in a workweek at any time from June 21, 2023 through final disposition of this matter, who were misclassified as salary exempt and thus were not paid at all for hours worked over 40 in a workweek, including off-the-clock scheduling work, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

333. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Named Plaintiffs, numerous current and former employees are similarly situated with regard to their claims against the Wage-Hour Defendants. Named Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

334. Such persons are "similarly situated" with respect to the Wage-Hour Defendants FLSA violations in that all were all were subjected to and injured

by Defendant's unlawful practice of failing to pay Named Plaintiffs and the Misclassified Managers Collective at all for hours that exceeded 40 in the workweek. All have the same claims against the Wage-Hour Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

335. The identities of the putative Misclassified Managers Collective are readily identifiable through the payroll records the Wage-Hour Defendants have maintained, and was required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2.

*iv. Scheduling Work Collective*

336. The fourth collective ("Scheduling Work Collective") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former site leads and house managers of the Wage-Hour Defendants who worked at any time from June 21, 2023 through final disposition of this matter, who were not paid at all for off-the-clock scheduling work, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

337. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) and O.R.C. § 4111.10(C) as to claims for unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA and OMFWSA. In addition to Named Plaintiffs,

numerous current and former employees are similarly situated with regard to their claims against the Wage-Hour Defendants. Named Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

338. Such persons are "similarly situated" with respect to the Wage-Hour Defendants FLSA and OMFWSA violations in that all were all were subjected to and injured by Defendant's unlawful practice of failing to pay Named Plaintiffs and the Scheduling Work Collective an overtime premium of one and a half times their regular rate for all hours that exceeded 40 in the workweek and not paying at all for some hours worked. All have the same claims against the Wage-Hour Defendants for unpaid minimum wage and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

339. The identities of the putative Scheduling Work Collective are readily identifiable through the payroll records the Wage-Hour Defendants have maintained, and was required to maintain, pursuant to the FLSA and OMFWSA. 29 U.S.C. § 211(c); 29 C.F.R. § 215.2; Ohio Const. Art. II, § 34a; O.R.C. § 4111.14.

## I. Wage-Hour Class Action Allegations

340. Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of themselves and others similarly situated who have similar claims under the law of the State of Ohio.

341. As with the four different wage-hour collectives, given the four distinct manners in which Defendants violated wage-hour laws, Named Plaintiffs seek

to represent four different classes: (i) the Retroactive Pay Reductions Class, (ii) the Straight Time Pay Class, (iii) the Misclassified Managers Class, and (iv) the Scheduling Work Class (collectively, the "Wage-Hour Classes").

   i.   *Retroactive Pay Reductions Class*

342.   The first class ("Retroactive Pay Reductions Class") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former employees of the Wage-Hour Defendants who worked at any time from June 21, 2023 through final disposition of this matter, who worked 40 or more hours in a workweek and had their pay rate reduced to minimum wage during their final two pay periods of employment, or who were not paid at all for PTO previously earned but taken during their final two pay periods of employment, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

343.   The members of the Retroactive Pay Reductions Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 40. The exact number of Retroactive Pay Reductions Class members, as well as their identities, can be determined from the Wage-Hour Defendants' records.

344.   The issues of liability are common to all members of the Retroactive Pay Reductions Class and are capable of common answers as those issues primarily focus on the Wage-Hour Defendants' acts (or failure to act).

Questions of law and fact common to the Retroactive Pay Reductions Class as a whole include, but are not limited to, the following:

i. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated for all hours worked, including for PTO hours previously earned by taken during the final two pay periods of employment;

ii. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated at one and a half their respective regular rates for all hours worked over 40 in any week;

iii. The number of 30-day periods that pass before the Wage-Hour Defendants pay the uncontested amounts due for their illegal retroactive pay reductions.

345. The questions of law or fact that are common to the Retroactive Pay Reductions Class predominate over any questions affecting only individual members. The primary questions that will determine the Wage-Hour Defendants' liability to the Retroactive Pay Reductions Class, listed above, are common to the Retroactive Pay Reductions Class as a whole, and predominate over any questions affecting only individual Retroactive Pay Reductions Class members.

346. Named Plaintiffs' claims are typical of the claims of other members of the Retroactive Pay Reductions Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Wage-Hour Defendants and are based on the same legal theories as the claims of other members of the Retroactive Pay Reductions Class.

347. Named Plaintiffs and the Retroactive Pay Reductions Class have all been injured in that they have been harmed due to the Wage-Hour Defendants' common actions and inactions in regard to the illegal reductions and unpaid time. The Wage-Hour Defendants' corporate wide policies and practices affected the Retroactive Pay Reductions Class similarly, and the Wage-Hour Defendants benefited from the same type of wrongful acts as to each of the Retroactive Pay Reductions Class members.

348. Because Named Plaintiffs seek relief on behalf of the Retroactive Pay Reductions Class members pursuant to the OPPA, their claims are not only typical of, but the same as, a claim under the OPPA brought by any other Retroactive Pay Reductions Class member.

349. Named Plaintiffs will fairly and adequately protect the interests of the Retroactive Pay Reductions Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Retroactive Pay Reductions Class members.

350. The Wage-Hour Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Retroactive Pay Reductions Class.

351. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous cases involving wage-hour violations. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

66

352.   Named Plaintiffs have retained counsel competent and experienced in complex class actions and Wage-Hour litigation.

353.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Retroactive Pay Reductions Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Retroactive Pay Reductions Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

354.   Additionally, employers under the OPPA have a legal obligation to act consistently with respect to all similarly situated employees. This portion of the action challenges whether the Named Defendants acted consistently with their duties as employers or otherwise violated the OPPA as to the Retroactive Pay Reductions Class as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Retroactive Pay Reductions Class.

355.   Resolving whether the Defendants properly paid Retroactive Pay Reductions Class members would, as a practical matter, be dispositive of the interests of the other participants in the Retroactive Pay Reductions Class even if they are not parties to this litigation and would substantially impair or

67

impede their ability to protect their interests if they are not made parties to this litigation by being included in the Retroactive Pay Reductions Class.

356. Because the Wage-Hour Defendants have acted or refused to act on grounds generally applicable to the Retroactive Pay Reductions Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Retroactive Pay Reductions Class as a whole.

357. No other litigation concerning this controversy has been filed by any other members of the Retroactive Pay Reductions Class.

*ii. Straight Time Pay Class*

358. The first class ("Straight Time Pay Class") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former employees of the Wage-Hour Defendants who worked 40 or more hours in a workweek at any time from June 21, 2023 through final disposition of this matter, who were not paid an overtime premium for all hours worked, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons, and excluding all employees covered by the settlement of *Cline v. Safe and Secure Homecare Corporation et al.*, Southern District of Ohio Case No. 2:25-cv-193.

359. The members of the Straight Time Pay Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 40.

The exact number of Straight Time Pay Class members, as well as their identities, can be determined from the Wage-Hour Defendants' records.

360. The issues of liability are common to all members of the Straight Time Pay Class and are capable of common answers as those issues primarily focus on the Wage-Hour Defendants' acts (or failure to act). Questions of law and fact common to the Straight Time Pay Class as a whole include, but are not limited to, the following:

i. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated at one and a half their respective regular rates for all hours worked over 40 in any week;

ii. The number of 30-day periods that pass before the Wage-Hour Defendants pay the uncontested amounts due for their illegal pay practices.

361. The questions of law or fact that are common to the Straight Time Pay Class predominate over any questions affecting only individual members. The primary questions that will determine the Wage-Hour Defendants' liability to the Straight Time Pay Class, listed above, are common to the Straight Time Pay Class as a whole, and predominate over any questions affecting only individual Straight Time Pay Class members.

362. Named Plaintiffs' claims are typical of the claims of other members of the Straight Time Pay Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Wage-Hour Defendants and are based on the same legal theories as the claims of other members of the Straight Time Pay Class.

69

363.   Named Plaintiffs and the Straight Time Pay Class have all been injured in that they have been harmed due to the Wage-Hour Defendants' common actions and inactions in regard to the illegal reductions and unpaid time. The Wage-Hour Defendants' corporate wide policies and practices affected the Straight Time Pay Class similarly, and the Wage-Hour Defendants benefited from the same type of wrongful acts as to each of the Straight Time Pay Class members.

364.   Because Named Plaintiffs seek relief on behalf of the Straight Time Pay Class members pursuant to the OPPA, their claims are not only typical of, but the same as, a claim under the OPPA brought by any other Straight Time Pay Class member.

365.   Named Plaintiffs will fairly and adequately protect the interests of the Straight Time Pay Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Straight Time Pay Class members.

366.   The Wage-Hour Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Straight Time Pay Class.

367.   Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous cases involving wage-hour violations. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

368.   Named Plaintiffs have retained counsel competent and experienced in complex class actions and Wage-Hour litigation

70

369. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Straight Time Pay Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Straight Time Pay Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

370. Additionally, employers under the OPPA have a legal obligation to act consistently with respect to all similarly situated employees. This portion of the action challenges whether the Named Defendants acted consistently with their duties as employers or otherwise violated the OPPA as to the Straight Time Pay Class as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Straight Time Pay Class.

371. Resolving whether the Defendants properly paid Straight Time Pay Class members would, as a practical matter, be dispositive of the interests of the other participants in the Straight Time Pay Class even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Straight Time Pay Class.

372. Because the Wage-Hour Defendants have acted or refused to act on grounds generally applicable to the Straight Time Pay Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Straight Time Pay Class as a whole.

373. Previous litigation regarding putative members of the Straight Time Pay Class was filed as *Cline v. Safe and Secure Homecare Corporation et al.*, Southern District of Ohio Case No. 2:25-cv-193. That case appears to have settled as a resolution for twelve opt-in Plaintiffs only, all of whom would be excluded from the Straight Time Pay Class. No other litigation concerning this controversy has been filed by any remaining members of the Straight Time Pay Class.

*iii. Misclassified Managers Collective*

374. The third class ("Misclassified Managers Class") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former managers of the Wage-Hour Defendants who worked 40 or more hours in a workweek at any time from June 21, 2023 through final disposition of this matter, who were misclassified as salary exempt and thus were not paid at all for hours worked over 40 in a workweek, including off-the-clock scheduling work, excluding any executive involved in the process of paying payroll, the officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

375. The members of the Misclassified Managers Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 40. The exact number of Misclassified Managers Class members, as well as their identities, can be determined from the Wage-Hour Defendants' records.

376. The issues of liability are common to all members of the Misclassified Managers Class and are capable of common answers as those issues primarily focus on the Wage-Hour Defendants' acts (or failure to act). Questions of law and fact common to the Misclassified Managers Class as a whole include, but are not limited to, the following:

i. Whether the Wage-Hour Defendants misclassified Named Plaintiffs and those similarly situated as exempt from overtime;

ii. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated for all hours worked;

iii. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated at one and a half their respective regular rates for all hours worked over 40 in any week;

iv. The number of 30-day periods that pass before the Wage-Hour Defendants pay the uncontested amounts due for their illegal misclassification.

377. The questions of law or fact that are common to the Misclassified Managers Class predominate over any questions affecting only individual members. The primary questions that will determine the Wage-Hour Defendants' liability to the Misclassified Managers Class, listed above, are

73

common to the Misclassified Managers Class as a whole, and predominate over any questions affecting only individual Misclassified Managers Class members.

378. Named Plaintiffs' claims are typical of the claims of other members of the Misclassified Managers Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Wage-Hour Defendants and are based on the same legal theories as the claims of other members of the Misclassified Managers Class.

379. Named Plaintiffs and the Misclassified Managers Class have all been injured in that they have been harmed due to the Wage-Hour Defendants' common actions and inactions in regard to the illegal reductions and unpaid time. The Wage-Hour Defendants' corporate wide policies and practices affected the Misclassified Managers Class similarly, and the Wage-Hour Defendants benefited from the same type of wrongful acts as to each of the Misclassified Managers Class members.

380. Because Named Plaintiffs seek relief on behalf of the Misclassified Managers Class members pursuant to the OPPA, their claims are not only typical of, but the same as, a claim under the OPPA brought by any other Misclassified Managers Class member.

381. Named Plaintiffs will fairly and adequately protect the interests of the Misclassified Managers Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Misclassified Managers Class members.

74

382. The Wage-Hour Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Misclassified Managers Class.

383. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous cases involving wage-hour violations. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

384. Named Plaintiffs have retained counsel competent and experienced in complex class actions and Wage-Hour litigation.

385. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Misclassified Managers Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Misclassified Managers Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

386. Additionally, employers under the OPPA have a legal obligation to act consistently with respect to all similarly situated employees. This portion of the action challenges whether the Named Defendants acted consistently with their duties as employers or otherwise violated the OPPA as to the

75

Misclassified Managers Class as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Misclassified Managers Class.

387.   Resolving whether the Defendants properly paid Misclassified Managers Class members would, as a practical matter, be dispositive of the interests of the other participants in the Misclassified Managers Class even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Misclassified Managers Class.

388.   Because the Wage-Hour Defendants have acted or refused to act on grounds generally applicable to the Misclassified Managers Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Misclassified Managers Class as a whole.

389.   No other litigation concerning this controversy has been filed by any other members of the Misclassified Managers Class.

*iv. Scheduling Work Class*

390.   The fourth class ("Scheduling Work Class") which Named Plaintiffs seek to represent and for whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Named Plaintiffs are also members, is composed of and defined as follows:

> All current and former site leads and house managers of the Wage-Hour Defendants who worked at any time from June 21, 2023 through final disposition of this matter, who were not paid at all for off-the-clock scheduling work, excluding any executive involved in the process of paying payroll, the

76

officers and directors of Defendants Safe & Secure (including any of their other subsidiaries or affiliates), or of any entity in which an officer or director has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

391. The members of the Scheduling Work Class are so numerous that joinder of all members is impracticable, but upon information and belief exceed 40. The exact number of Scheduling Work Class members, as well as their identities, can be determined from the Wage-Hour Defendants' records.

392. The issues of liability are common to all members of the Scheduling Work Class and are capable of common answers as those issues primarily focus on the Wage-Hour Defendants' acts (or failure to act). Questions of law and fact common to the Scheduling Work Class as a whole include, but are not limited to, the following:

i. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated for all hours worked;

ii. Whether the Wage-Hour Defendants failed to pay Named Plaintiffs and those similarly situated at one and a half their respective regular rates for all hours worked over 40 in any week;

iii. The number of 30-day periods that pass before the Wage-Hour Defendants pay the uncontested amounts due for their illegal pay practices.

393. The questions of law or fact that are common to the Scheduling Work Class predominate over any questions affecting only individual members. The primary questions that will determine the Wage-Hour Defendants' liability to the Scheduling Work Class, listed above, are common to the Scheduling Work

77

Class as a whole, and predominate over any questions affecting only individual Scheduling Work Class members.

394.   Named Plaintiffs' claims are typical of the claims of other members of the Scheduling Work Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Wage-Hour Defendants and are based on the same legal theories as the claims of other members of the Scheduling Work Class.

395.   Named Plaintiffs and the Scheduling Work Class have all been injured in that they have been harmed due to the Wage-Hour Defendants' common actions and inactions in regard to the illegal reductions and unpaid time. The Wage-Hour Defendants' corporate wide policies and practices affected the Scheduling Work Class similarly, and the Wage-Hour Defendants benefited from the same type of wrongful acts as to each of the Scheduling Work Class members.

396.   Because Named Plaintiffs seek relief on behalf of the Scheduling Work Class members pursuant to the OPPA, their claims are not only typical of, but the same as, a claim under the OPPA brought by any other Scheduling Work Class member.

397.   Named Plaintiffs will fairly and adequately protect the interests of the Scheduling Work Class. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Scheduling Work Class members.

398.   The Wage-Hour Defendants do not have any unique defenses that would interfere with Named Plaintiffs' representation of the Scheduling Work Class.

78

399. Plaintiffs' counsel, a former Trial Attorney with the U.S. DOL, SOL, has extensive experience in complex litigation, including numerous cases involving wage-hour violations. Counsel additionally has extensive experience handling class action litigation, and is Of Counsel to a firm that does primarily class action litigation.

400. Named Plaintiffs have retained counsel competent and experienced in complex class actions and Wage-Hour litigation.

401. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Scheduling Work Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Scheduling Work Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

402. Additionally, employers under the OPPA have a legal obligation to act consistently with respect to all similarly situated employees. This portion of the action challenges whether the Named Defendants acted consistently with their duties as employers or otherwise violated the OPPA as to the Scheduling Work Class as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Scheduling Work Class.

403. Resolving whether the Defendants properly paid Scheduling Work Class members would, as a practical matter, be dispositive of the interests of the other participants in the Scheduling Work Class even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Scheduling Work Class.

404. Because the Wage-Hour Defendants have acted or refused to act on grounds generally applicable to the Scheduling Work Class, appropriate declaratory and injunctive relief applies to Named Plaintiffs and the Scheduling Work Class as a whole.

405. No other litigation concerning this controversy has been filed by any other members of the Scheduling Work Class.

### COUNT XIV: LIABILITY FOR VIOLATION OF THE

### FAIR LABOR STANDARDS ACT, OVERTIME: 29 U.S.C. § 207

406. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

407. Named Plaintiffs bring this claim for violations of the FLSA's overtime provisions on behalf of themselves and the Wage-Hour Collectives, who will join this case pursuant to 29 U.S.C. § 216(b).

408. At all relevant times, Named Plaintiffs and the Wage-Hour Collectives regularly worked 40 or more hours per workweek for the Wage-Hour Defendants.

409. Named Plaintiffs and the Wage-Hour Collectives were not paid lawful overtime compensation of one and one-half times their regular rates for all

hours worked in excess of 40 in a workweek, resulting in violations of the FLSA.

410.    At all relevant times, the Wage-Hour Defendants knew it was required to pay Named Plaintiffs and the Wage-Hour Collectives all overtime compensation earned at a rate of one and a half times their properly calculated regular rate.

411.    As a result of the Wage-Hour Defendant's violations of the FLSA, Named Plaintiffs and the Wage-Hour Collectives were injured in that they did not receive all overtime compensation due to them pursuant to the FLSA. They are entitled to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.*

**COUNT XV: LIABILITY FOR VIOLATION OF THE**

**OHIO CONSTITUTION, ART. II § 34A: MINIMUM WAGE AND**

**THE OHIO MINIMUM FAIR WAGE STANDARDS ACT: O.R.C. CH. 4111**

412.    Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

413.    Named Plaintiffs bring this claim for violations of the Ohio Constitution's and the OMFWSA's minimum wage provisions on behalf of themselves and the Wage-Hour Collectives, who will join this case pursuant to O.R.C. § 4111.10(C).

81

414. At all relevant times, Named Plaintiffs and the Wage-Hour Collectives were not paid at all for certain hours worked.

415. By not being paid at all for certain hours worked, Named Plaintiffs and the Wage-Hour Collectives were not paid the required minimum compensation under the Ohio Constitution and OMFWSA.

416. At all relevant times, the Wage-Hour Defendants knew it was required to pay Named Plaintiffs and the Wage-Hour Collectives compensation earned for all hours worked.

417. As a result of the Wage-Hour Defendant's violations of the Ohio Constitution and OMFWSA, Named Plaintiffs and the Wage-Hour Collectives were injured in that they did not receive all compensation due to them under these laws. They are entitled to an award of "back, wages, damages, and the employee's costs and reasonable attorney's fees. Damages shall be calculated as an additional two times the amount of the back wages." Ohio Const., Art. II, § 34a.

## COUNT XVI: LIABILITY FOR VIOLATION OF THE OHIO PROMPT PAY ACT, MINIMUM WAGE AND OVERTIME VIOLATIONS: O.R.C. § 4113.15

418. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

419. The OPPA, O.R.C. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the

82

fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month." *Id.*

420. Under the OPPA, O.R.C.A. § 4113.15(C), each payday delinquent for 30 days unpaid wages constitutes a separate violation of this statute, and each 30 day unpaid period constitutes a separate violation of this statute.

421. Named Plaintiffs bring this claim for violation of the OPPA on behalf of themselves and members of the Wage-Hour Classes for which certification is sought pursuant to Fed. R. Civ. P. 23.

422. Named Plaintiffs and the members of the Wage-Hour Classes were not timely paid all wages earned as required by the OPPA because the Wage-Hour Defendants did not pay wages for all hours worked.

423. The missed payments due under the OPPA to Named Plaintiffs and the members of the Wage-Hour Classes entitles them to the unpaid wages, plus "an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." O.R.C. § 4113.15(B).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1. Pursuant to ERISA §§ 502(a)(1)(B), (a)(2), (a)(3), and (c)(1), 29 U.S.C. § 1132 (a)(1)(B), (a)(2), (a)(3), and (c)(1) for appropriate and equitable relief against the Health Plan Defendants:

 i. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiffs and Health Plan Class members;

 ii. Appoint Named Plaintiffs as Health Plan Class representatives and

Plaintiffs' counsel as Health Plan Class counsel;

iii. Enter judgment against the Health Plan Defendants and in favor of the Named Plaintiffs and Health Plan Class;

iv. Order the Health Plan Defendants to restore to the Health Plan and the Health Plan participants and beneficiaries all losses they suffered, including interest, resulting from fiduciary breaches committed by the Health Plan Defendants or for which they are liable as co-fiduciaries;

v. Order the Health Plan Defendants to correct and undo the prohibited transactions in which they engaged;

vi. Order the Health Plan Defendants to disgorge any profits or benefits gained as a result of their fiduciary breaches and/or participation in prohibited transactions;

vii. Award Plaintiffs the costs of this action, including attorney's fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

2. Pursuant to ERISA §§ 502(a)(1)(B), (a)(2), (a)(3), and (c)(1), 29 U.S.C. § 1132 (a)(1)(B), (a)(2), (a)(3), and (c)(1) for appropriate and equitable relief against the 401(k) Plan Defendants:

i. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiffs and 401(k) Class members;

ii. Appoint Named Plaintiffs as 401(k) Class representatives and Plaintiffs' counsel as 401(k) Plan Class counsel;

iii. Enter judgment against the 401(k) Plan Defendants and in favor of the Named Plaintiffs and 401(k) Plan Class;

iv. Order the 401(k) Plan Defendants to restore to the 401(k) Plan and the

84

401(k) Plan participants and beneficiaries all losses they suffered, including interest, resulting from fiduciary breaches committed by the 401(k) Plan Defendants or for which they are liable as co-fiduciaries;

v. Order the 401(k) Plan Defendants to correct and undo the prohibited transactions in which they engaged;

vi. Order the 401(k) Plan Defendants to disgorge any profits or benefits gained as a result of their fiduciary breaches and/or participation in prohibited transactions;

vii. Award Plaintiffs the costs of this action, including attorney's fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

3. Pursuant to O.R.C. § 4113.15, for appropriate relief against the Voluntary Plans Defendants:

i. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiffs and members of the Voluntary Plans Class;

ii. Appoint Named Plaintiffs as representatives of the Voluntary Plans Class representatives and Plaintiffs' counsel as counsel for the Voluntary Plans Class;

iii. Enter judgment against the Voluntary Plans Defendants and in favor of the Named Plaintiffs and Voluntary Plans Class;

iv. Order the Voluntary Plans Defendants to pay a liquidated damages of six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater to each Named Plaintiff and members of the Voluntary Plans Class per each thirty-day period of violation, per each payday for which the Voluntary

Plans Defendants failed to timely pay wages; and

4. Pursuant to the FLSA § 7, 29 U.S.C. § 207, for appropriate relief against the Wage-Hour Defendants:

   i. Authorize FLSA notice pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to the Wage-Hour Collectives informing them of this action and enabling them to opt-in;

   ii. Enter judgment against the Wage-Hour Defendants and in favor of the Named Plaintiffs and Wage-Hour Collectives;

   iii. Award Named Plaintiffs and the Wage-Hour Collectives actual damages for unpaid wages;

   iv. Award Named Plaintiffs and the Wage-Hour Collectives liquidated damages equal in amount to the unpaid wages found due to them;

   v. Award Named Plaintiffs and the Wage-Hour Collectives the costs of this action, including reasonable attorneys' fees; and

5. Pursuant to the Ohio Const., Art. II, § 34a and the OMFWSA, O.R.C. Ch. 4111, for appropriate relief against the Wage-Hour Defendants:

   i. Authorize FLSA notice pursuant to O.R.C. § 4111.10(C) and direct that Court-approved notice be issued to the Wage-Hour Collectives informing them of this action and enabling them to opt-in;

   ii. Enter judgment against the Wage-Hour Defendants and in favor of the Named Plaintiffs and Wage-Hour Collectives;

   iii. Award Named Plaintiffs and the Wage-Hour Collectives actual damages for unpaid wages;

   iv. Award Named Plaintiffs and the Wage-Hour Collectives liquidated

damages equal in amount to the unpaid wages found due to them;

    v. Award Named Plaintiffs and the Wage-Hour Collectives the costs of this action, including reasonable attorneys' fees; and

6. Pursuant to O.R.C. § 4113.15, for appropriate relief against the Wage-Hour Defendants:

    i. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiffs and members of the Wage-Hour Classes;

    ii. Appoint Named Plaintiffs as representatives of the Wage-Hour Classes representatives and Plaintiffs' counsel as counsel for the Wage-Hour Classes;

    iii. Enter judgment against the Wage-Hour Defendants and in favor of the Named Plaintiffs and Wage-Hour Classes;

    iv. Order the Wage-Hour Defendants to pay a liquidated damages of six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater to each Named Plaintiff and members of the Wage-Hour Classes per each thirty-day period of violation, per each payday for which the Wage-Hour Defendants failed to timely pay wages; and

7. Grant such other and further relief as may be appropriate and just.

Respectfully submitted,

*/s/ Adam Lubow*
Adam Lubow (OH 0097517)
Law Office of Adam Lubow
700 W. St. Clair Ave., #320
Cleveland, Ohio 44113

87

(216) 250-1321
adam@lubowlaw.com
*Attorney for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.


/s/ Adam Lubow
Adam Lubow
Attorney for Plaintiffs